IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DOUGLAS M. LOCKRIDGE, § | | |
| TDCJ-CID NO.1401877, § | | |
| Plaintiff, § | | |
| v. § | | CIVIL ACTION H-10-1839 |
| § | | |
| MELANIE POTTER, *et al.,* § | | |
| Defendants. § | | |

OPINION ON DISMISSAL

Plaintiff Douglas M. Lockridge, a state inmate proceeding *pro se* and *in forma pauperis*, filed a complaint alleging violations of his civil rights under 42 U.S.C.§ 1983 by medical personnel at the Jester III Unit of the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID).  (Docket Entries No.1, No.6).  Defendants Dr. Edgar Hulipas and PA Melanie Potter have filed a motion for summary judgment.  (Docket Entry No.18).  Plaintiff has not filed a response to the motion.

For the reasons to follow, the Court will grant defendants' motion for summary judgment and dismiss plaintiff's complaint.

I. BACKGROUND

Plaintiff claims the following events gave rise to the pending complaint. From July 2007 through November 2008, plaintiff complained to defendants Hulipas and Potter that he suffered from pain to his right kidney but they refused to order diagnostic tests or prescribe appropriate pain medication.  Plaintiff attributes their failure to act to State policies that dictated that they follow cost-savings measures.  (Docket Entry No.1-1, page 3).  On March 18, 2008, internal diagnostic testing results showed that plaintiff's right kidney was damaged and that it was deteriorating.  (*Id*.).  Still Hulipas and Potter

refused to prescribe narcotic pain relief. (*Id.*). From November 2008 to January 2009, Hulipas and Potter failed to prioritize and schedule surgery on the kidney and failed to alleviate the pain he suffered from the dysfunctional kidney. (*Id.*). They also failed "to maintain contact, to consult and to take action on his pain, or to have the surgery performed elsewhere[,]" thereby causing plaintiff to suffer unrelenting pain from the excessive delay. (*Id.*). On January 20, 2009, a second diagnostic test showed that plaintiff's kidney was no longer functioning and that it needed to be removed. (*Id.*). On January 27, 2009, plaintiff's kidney was removed by a surgical team at the University of Texas Medical Branch (UTMB) in Galveston, Texas. (*Id.*).

Based on these allegations, plaintiff seeks compensatory and punitive damages, and declaratory and injunctive relief from defendants on grounds that defendants Hulipas and Potter were deliberately indifferent to his serious medical needs by delaying "proper diagnostic testing until all other cost-savings less efficacious treatments were made" and failing or refusing to prescribe narcotics to alleviate his pain. (*Id.*, pages 4-5). Plaintiff also claims that defendants Potter and Hulipas were negligent in treating his physical pain and extended the time he suffered from such pain by failing to prioritize his surgery. (*Id.*, page 4).

Defendants move for summary judgment on grounds that they are entitled to judgment as a matter of law on plaintiff's medical deliberate indifference claims. They also assert the defense of qualified immunity. (Docket Entry No.18).

II. DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to

2

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 199-200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

"To rebut the qualified immunity defense, the plaintiff must show: (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident." *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008) (footnote omitted). The Court has discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners.

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The plaintiff must prove objectively that he was exposed to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The plaintiff must also show that prison officials acted or failed to act with deliberate indifference to that risk. *Id.* at 834. The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the prison officials were actually aware of the risk, yet consciously disregarded it. *Id.* at 837, 839; *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002).

Deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle*, 429 U.S. at 104-05. "[F]acts underlying a claim of 'deliberate indifference' must clearly evince the medical need in question and the alleged official dereliction." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Id*. Assertions of inadvertent failure to provide medical care or negligent diagnosis, however, are insufficient to state a claim. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

A. Diagnostic Testing

Plaintiff contends that defendants delayed "proper diagnostic testing until all other cost-savings less efficacious treatments were made." (Docket Entry No.1-1, page 4).

Plaintiff's allegation that defendants prolonged additional diagnostic tests and treatment pursuant to State policy is without factual support. Plaintiff does not cite to

4

any policy with respect to diagnostic tests or treatment; nor does he reference any comment by medical or prison personnel that would imply that defendants acted in such manner.

Plaintiff's uncontroverted medical records show that plaintiff suffers from several chronic conditions including a hernia, Hepatitis C, diabetes mellitus, hypertension, blindness and low vision. (Docket Entries No.18-20, page 2; No.18-21, page 5). He was transferred to the Jester III Unit on February 8, 2007, for mental health treatment. (Docket Entry No.18-20, page 2). Plaintiff reported to the Unit's mental health provider within days of his transfer that he was feeling bad "due to chronic back pain from an old injury." (*Id.*, page 1).

Thereafter until June 1, 2007, plaintiff complained specifically of back pain and spasms to numerous health providers at the Jester III Unit. (Docket Entries No.18-42, pages 5-6; No. 18-43, page 3). He was prescribed muscle relaxants and over-the-counter pain medication. On March 27, 2007, Dr. Hulipas ordered a lumbosacral back x-ray, which was negative for abnormalities. (Docket Entries No.18-9, page 10; No.18-37, page 17; No.18-42, page 5). Another back x-ray on August 3, 2007, ordered by Dr. Dumas, was negative for fracture or acute bone pathology. (Docket Entry No.18-37, page 15).

On June 1st and 15th, plaintiff was taken to the Unit emergency clinic with a complaint of kidney pain. (Docket Entries No.18-14, pages 25, 34; No.18-42, page 6). On June 26 and September 8, 2007, he was again taken to the Unit emergency clinic with a complaint of lower back pain. (Docket Entries No.18-14, pages 32, 33). On each occasion, plaintiff was released to his cell when the pain subsided. On July 17,

5

2007, Dr. Kokila Naik ordered physical therapy for plaintiff's lower back issues. (Docket Entries No.18-41, page 12; No.18-42, page 18-42, page 7). Plaintiff continued to complain of back and kidney pain. (Docket Entry No. 18-43). An abdominal x-ray taken on September 12, 2007, was negative and did not show an enlarged kidney shadow or stone. (Docket Entries No.18-37, page 14; No.18-42, page 9).

Although plaintiff complained of pain in his right lower back, he had no incontinence or loss of urine and dipstick urine tests were negative. The results of a dipstick urine test on June 26, 2007, in which trace amounts of blood and protein were found, were not specific and could be caused by various illnesses. (Docket Entries No.18-14, page 33; No.18-42, page 6). Urinalysis and other blood chemistries from July 11, 2007, to March 1, 2008, were normal. (Docket Entries No.18-42, No.18-43). On November 9, 2007, plaintiff was discharged from physical therapy. Discharge notes indicate that plaintiff's back pain could be referred pain from kidney problem. (Docket Entry No.18-38, page 1).

On March 12, 2008, plaintiff was seen in the Hospital Galveston specialty clinic for "right-sided flank pain for greater than a year with intermittent stream and urgency with urination." (Docket Entries No.18-11 pages 6-7, No.18-42, page 11). Plaintiff's urine culture showed no aerobic organisms or malignant cells. (Docket Entry No.18-31, pages 7, 9). A CT scan showed mild hydronephrosis, *i.e.,* a slight enlargement of the kidney, but a urine test was negative for malignancy. (Docket Entries No.18-31, page 9; No.18-42, page 11). A CT scan on March 17, 2008 showed significant worsening of the hydronephrosis and an obstruction in the ureter. (Docket Entries No. 18-37, page 11; No.18-42, page 11). Another test on April 29, 2008, however, showed

6

no malignancy. (*Id*.). On April 28, 2008, a cystocopy and ureteroscopy was performed on plaintiff at Hospital Galveston due to a ureteral defect on his right side. (*Id*., page 12). On June 19, 2008, plaintiff was admitted to Hospital Galveston for elective surgery to his right kidney but the surgery was cancelled and plaintiff was discharged to his unit. (*Id*.). On November 5, 2008, plaintiff's pre-op laboratory tests, which included a urinalysis and tests for kidney function, were normal. (*Id.*, page 13). On January 21, 2009, plaintiff's right kidney was removed via laparoscope. The kidney was non-functioning due to a congenital obstruction of the ureteropelvic junction. (*Id*.).

Plaintiff has not shown, and the record does not show, that the facts known to Dr. Hulipas and PA Potter before the CT scans in March 2008 clearly evinced the medical need in question, *i.e*., that plaintiff suffered a congenital defect resulting in a malfunctioning kidney. To the extent that they failed to accurately diagnose plaintiff's condition or to order additional testing based only on his complaint of back pain does not give rise to a claim of deliberate indifference. The "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838. Moreover, an incorrect diagnosis does not state an Eighth Amendment claim because the deliberate indifference standard has not been met. *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (citation omitted). The same is true regarding the decision to treat an inmate in the Unit's medical department rather than to send him to outside medical providers or specialists. *See Alfred v. Texas Department of Criminal Justice*, 80 Fed. App'x 926, 927–28 (5th Cir. 2003). The question of whether "additional diagnostic techniques or forms of treatment is

7

indicated is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107; *see also Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

Furthermore, plaintiff's medical records demonstrate that he was afforded regular medical attention and care for his complaints of pain and his other chronic medical issues, thus, defeating his claim of deliberate indifference. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (noting that "medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference"). He was examined and treated for numerous ailments by several providers, including PA Potter and Dr. Hulipas, who ordered laboratory and other diagnostic testing and prescribed medication for pain and treatment. (Docket Entries No.18-4, page 34; No.18-5, page 31; No.18-8, pages 13, 26, 34, 35; No.18-9, pages 1, 2, 5, 10, 11; No.18-24, page 1; No.18-42). This record supports the affidavit testimony of defendants' expert, Dr. Steven Bowers, that neither Dr. Hulipas nor PA Potter "ignore[d] a problem but rather took great effort in working up, referring and treating the patient." (Docket Entry No.18-42, page 14). The record also supports his attestation that "[a]t all times, pain medication was provided for multiple conditions and complaints and multiple tests were ordered by both for the multiple problems and assessments." (*Id.*).

Plaintiff fails to defeat defendants' defense of qualified immunity because he has failed to show that they were deliberately indifferent to his serious medical needs by their treatment and diagnostic testing; therefore, defendants are entitled to summary judgment on this claim.

B.  Pain medication

Plaintiff complains that defendants were deliberately indifferent to his serious medical needs because they failed or refused to prescribe narcotics to alleviate his pain and they were negligent in treating his physical pain. (Docket Entry No.1-1, pages 4-5). Plaintiff does not dispute that defendants regularly prescribed pain medication for his back pain and responded to his requests to renew medication. Moreover, the record reflects that both defendants prescribed pain medication for his complaints of back and kidney pain both before and after the CT scans and aborted surgery. Plaintiff might not have received the optimal pain treatment but his pain was treated by muscle relaxers and over-the-counter pain medication. Plaintiff's complaint that defendants refused to prescribe stronger medication or narcotic pain medication, therefore, amounts to no more than a mere disagreement with the course of treatment provided and not deliberate indifference. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th cir. 1997).

Defendants are also entitled to summary judgment on this claim.

C.  Delay

Finally, plaintiff contends that defendants delayed treatment of his back pain by failing to prioritize his surgery. A delay in medical care violates the Eighth Amendment only if it is due to deliberate indifference and the delay results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Negligence and medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with his medical treatment does not establish a constitutional violation. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

9

Defendants' summary judgment evidence is undisputed. The record clearly shows that the first scheduled surgery on his right kidney was cancelled by providers at Hospital Galveston on June 19, 2008, without further notice. (Docket Entries No.18-16, page 4; No.18-42, page 12). No reason was offered for the cancellation by the hospital but the record reflects no indication that cancellation was result of defendants' deliberate indifference to plaintiff's serious medical needs. Plaintiff's urologist's appointment was rescheduled for December 2008. (Docket Entry No.18-29, page 6). In Physician Clinic Notes dated December 19, 2008, Dr. Hulipas indicated that he was awaiting the operating room schedule in Hospital Galveston. (Docket Entry No.18-8, page 9). He reported urinalysis and blood chemistries from testing in October, November and December 2008. He found that plaintiff's kidney function was stable and continued the same medication prescriptions. (*Id.*, page 10). The same day, Dr. Hulipas requested that another medical staff member call Hospital Galveston and check the appointment for the operating schedule per the urologist's note. (Docket Entry No.18-3, page 5).

Plaintiff has not shown, and his medical records do not show that defendants deliberately delayed his surgery at Hospital Galveston. His medical records implicitly show that the unintentional delay in the provision of treatment was caused by an outside medical provider, for which defendants cannot be held accountable. Plaintiff does not allege that the delay in treatment resulted in a worsening of his condition or in "substantial harm," except to the extent that the pain in his right lower flank continued unabated even with medication. *See Mendoza*, 989 F.2d at 195; *Fuller v. Harris County*, 294 Fed. App'x 167, 2008 WL 4411390 at *1 (5th Cir. 2008) (summary judgment

granted to prison officials where evidence showed that prison medical staff provided interim treatment and where delay in scheduling of second surgery was not shown to have resulted from deliberate indifference or to have caused substantial harm). In light of this record, the Court finds no evidence of deliberate indifference to a perceived serious risk of harm to his health or safety. Instead, if anything, his allegations sound only in the nature of a claim of negligence or medical malpractice which is not actionable under § 1983. Accordingly, defendants are entitled to summary judgment on this claim.

III. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1. Defendants Melanie Potter and Edgar Hulipas's Motion for Summary Judgment (Docket Entry No.18) is GRANTED.

2. This case is DISMISSED WITH PREJUDICE.

3. All pending motions, if any, are DENIED.

The Clerk shall provide a copy of this Order to the parties.

SIGNED at Houston, Texas, this 19th day of March, 2012.

                                                MELINDA HARMON
                                      UNITED STATES DISTRICT JUDGE